UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

    FLOUR CITY BAGELS, LLC,[1]            Case No. 16-20213
                                                           Chapter 11 Case

                                Debtor.

**DEBTOR'S MOTION FOR ENTRY OF AN INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, AND (C) SETTING A FINAL HEARING**

Flour City Bagels, LLC, debtor and debtor-in-possession (the "Debtor"), hereby moves (the "Motion") this Court for entry of a proposed *Interim Order (A) Authorizing the Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Setting a Final Hearing* (the "Interim Order"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtor to use cash collateral to pay operating expenses and other expenses necessary to maintain the Debtor's viability as a going concern, (ii) authorizing the Debtor to grant the Lenders (defined below) adequate protection for the use of such cash collateral, and (iii) scheduling a final hearing on this Motion.

The proposed Interim Order will provide the Debtor with critically needed funds for its day-to-day operating expenses, while also providing the Lenders with "adequate protection" pursuant to section 363(e) of title 11 of the United States Code (the "Bankruptcy Code").

In support of this Motion, the Debtor states as follows:

**JURISDICTION AND VENUE**

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtor's chapter 11 case and this Motion is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's federal tax identification number are 9515.

## BACKGROUND

2. On March 2, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. The Debtor is a New York limited liability company that operates 32 bakeries that serve authentic "New York Style" bagels, coffee, drinks, soups, salads, sandwiches, fresh fruit, and a large variety of other related items. Its bakeries are located in three tightly-clustered geographic regions—Rochester (13 bakeries), Albany (13 bakeries), and Syracuse (6 bakeries). The Debtor's headquarters are in Fairport, New York.

4. The Debtor has remained in possession of its property subsequent to the Petition Date as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On or about February 5, 2013, Debtor and other non-debtor borrowers (including the Debtor's sole member, HOT, LLC ("HOT")) executed in favor of United Capital Business Lending, Inc., n/k/a Bridge Funding Group, Inc. ("United Capital"), a Promissory Note in the original principal amount of $6,500,000 evidencing a loan made by United Capital (the "United Capital Loan") pursuant to a Loan and Security Agreement dated of even date therewith and other Loan Documents (as defined in the Loan and Security Agreement), as amended, modified and restated from time to time (collectively, the "United Capital Loan Documents"). In connection with the loan, the Debtor granted, assigned and transferred security interests and liens to United Capital on substantially all of its personal property assets (the "United Capital Pre-Petition Liens").

6. On or about February 8, 2013, the Debtor, other non-debtor entities (including HOT), and Canal Mezzanine Partners II, LP ("Canal"; and, together with United Capital, the "Lenders") entered into that certain Senior Subordinated Note and Warrant Purchase Agreement pursuant to which Canal agreed to loan the aggregate principal amount of $2,500,000, which was increased in

December 2013 to $3,300,000 (the "Canal Loan"), secured by, among other instruments and documents, a Continuing Security Agreement of even date therewith (as amended, modified and restated from time to time, collectively, the "Canal Loan Documents"), and security interests and liens on substantially all of the Debtor's personal property assets (the "Canal Pre-Petition Liens"; and, with the United Capital Pre-Petition Liens, the "Pre-Petition Liens").

7. The Lenders entered into that certain Subordination Agreement dated February 7, 2013 (as amended, the "Subordination Agreement"), pursuant to which Canal subordinated its rights under the Canal Loan Documents to the rights of the United Capital under the United Capital Loan Documents. Under the Subordination Agreement, the Canal Pre-Petition Liens are subordinate to the United Capital Pre-Petition Liens. (Copies of the United Capital Loan Documents, the Canal Loan Documents, and the Subordination Agreement (and the First Amendment to Subordination Agreement) are attached to this Motion collectively as **Exhibits B**, **C**, and **D**, respectively.)

8. As a result of defaults under the United Capital Loan Documents, the Debtor, other non-debtor borrowers, and United Capital entered into a Forbearance Agreement on or about May 29, 2015, pursuant to which United Capital agreed to forbear from exercising its remedies under the United Capital Loan Documents through November 15, 2015 (the "Forbearance Period"). On August 4, 2015, United Capital consented to Canal exercising its rights under that certain Membership Interest Pledge Agreement dated February 8, 2013, executed by the owners of HOT, F. Kenneth Greene, Richard DeCarr, and Michael Borrelli (collectively, the "Pledgors"), in favor of Canal (the "Pledge Agreement"). Consequently, on or about August 4, 2015, Canal exercised certain of its rights under the Pledge Agreement, including, (i) terminating the Pledgors' rights to vote their membership interests in HOT and conferring upon Canal the sole and exclusive right to exercise any and all voting rights and powers regarding the pledged membership interests in HOT, and (ii) voting

the membership interests in HOT to remove the Debtor's then-managers F. Kenneth Greene, Richard DeCarr (Michael Borrelli already had departed in 2014) and to designate Kevin Coyne as HOT's sole manager.

9 Lenders assert that the Pre-Petition Liens constitute the first and best security interests (with Canal Pre-Petition Liens being subordinate to the United Capital Pre-Petition Liens) on all personal property assets of the Debtor, including, without limitation, all then-owned or after-acquired right, title and interest in and to "all assets," personal property and fixtures, wherever located, and now owned or hereafter acquired, including, including accounts, chattel paper, inventory, equipment, instruments (including promissory notes, including but not limited to that certain promissory note from Great Northern Pizza Kitchen, LLC to 2 Hot, LLC), investment property, documents, deposit accounts, letter-of-credit rights, general intangibles (including payment intangibles), membership interests in other entities, including Hot, LLC, trademarks, including the trademark for Great Northern Pizza Kitchens Registration Number 2571265, service marks, licensing agreements, including a licensing agreement by and between 2 Hot, LLC and Great Northern Pizza Kitchen, Inc., website domain names, promissory notes and supporting obligations and, to the extent not listed above as original collateral, and proceeds and products of the foregoing (collectively, the "Prepetition Collateral"), with priority over all other liens.

10. As of the Petition Date, the value of the Prepetition Collateral is believed to be equal to or greater than the aggregate indebtedness owed to the Lenders.

4

Case 2-16-20213-PRW   Doc 6   Filed 03/02/16   Entered 03/02/16 22:26:17   Desc Main
Document   Page 4 of 10

**BASIS FOR RELIEF REQUESTED**

**I.      TERMS FOR THE PROPOSED USE OF CASH COLLATERAL**

11.     Section 363(c)(2) of the Bankruptcy Code provides that, after notice and a hearing, a trustee (i.e., a debtor-in-possession in a Chapter 11 case) may use cash collateral in which an entity such as the Lenders claim an interest, if such entity consents or the Court authorizes such use. The Lenders have informed the Debtor that the Lenders consent to the use of cash collateral, but only upon the terms and conditions of the attached Interim Order.

12.     Pursuant to section 363(e) of the Bankruptcy Code, the court may condition or prohibit such use to the extent necessary to provide adequate protection to the entities claiming an interest in such cash collateral. In this instance, the Lenders' interests in the proceeds of the Pre-Petition Collateral are being adequately protected by virtue of the terms proposed hereafter and in the Interim Order. The Debtor therefore can and should be authorized to use collections of accounts receivable and other cash collateral to avoid disruption of its business, to preserve its employees' jobs, and to maximize the value of its assets.

13.     In the Interim Order, the Debtor proposes, among other terms and provisions, the following provision for the use of cash collateral, which provide adequate protection to the Lenders for any diminution in the value of the cash collateral:

   a. cash collateral may be used for purposes of paying the Debtor's operating expenses and other amounts allowed by the Court in accordance with the budget attached to this Motion as <u>Exhibit E</u> (the "Budget"). Interim Order at ¶s G, 2, pp. 6-7, 8-9;

   b. The Lenders shall have an allowed superpriority administrative expense claim pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code as provided for by section 507(b) of the Bankruptcy Code (the "Superpriority Claims"). Subject to the Carve-Out (as defined in the Interim Order, with respect to certain estate professional fees and expenses and quarterly fees owed to the Office of the United States Trustee), the Superpriority Claims

5

Case 2-16-20213-PRW    Doc 6    Filed 03/02/16    Entered 03/02/16 22:26:17    Desc Main
Document    Page 5 of 10

shall be an allowed claim against the Debtor with priority over any and all administrative expenses and all other claims asserted against the Debtor, now existing or hereafter arising of any kind whatsoever, including all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including 105, 326, 327, 328, 330, 331, 503(b), 507(a), 507(b), or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment. Interim Order at ¶3(a), pp. 9-10;

c. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Lenders shall have a valid, binding, continuing, enforceable, fully-perfected, non-avoidable replacement first priority lien, to the fullest extent permissible by applicable law, on all previously unencumbered property, whether now owned or hereafter acquired or existing and wherever located, of Debtor and Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code) of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of or equity or ownership interests in Debtor's direct subsidiaries, money, investment property, and causes of action, in each case that is not subject to (x) valid, perfected, unavoidable, and enforceable liens in existence on or as of the Petition Date or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Collateral"). Interim Order at ¶3(b)(i), pp. 10-11;

d. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Lenders shall have, a valid, binding, continuing, enforceable, fully-perfected non-avoidable replacement lien on, and security interest in, all property, whether now owned or hereafter acquired or existing and wherever located, of Debtor and Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code) of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit

6

accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of or equity or ownership interests in Debtor's direct subsidiaries, money, investment property, and causes of action, other than any claim or cause of action of the Debtor's estate under chapter 5 of the Bankruptcy Code, including sections 502(d), 510, 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, or the proceeds thereof (the "Replacement Collateral" and, together with the Unencumbered Collateral and the Prepetition Collateral, the "Post-Petition Collateral"). Interim Order at ¶3(b)(ii), pp. 11-12;

e. Subject to entry of a final order granting the Motion, the Debtor shall irrevocably waive and shall not assert any surcharge claim against the Lenders, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lenders upon, the Collateral (defined in the Interim Order) or the Pre-Petition Collateral. Interim Order at ¶s F, 9, pp. 6, 16; and

f. The Debtor stipulates to the validity, extent, perfection, and priority of the Lenders' respective Prepetition Liens and the amounts owed to each of the Lenders (the "Pre-Petition Debt"), but any official committee(s) appointed in this chapter 11 case or any other party in interest with requisite standing shall have sixty (60) days from entry of the Interim Order within which to raise any objection to or otherwise challenge the Prepetition Liens or the Pre-Petition Debt. Interim Order at ¶6, pp. 13-14.

## II. THE DEBTOR'S EMERGENCY NEED TO USE TO USE CASH COLLATERAL

14. Unless it is permitted to use proceeds of its accounts receivable and other cash collateral for the purposes outlined in this Motion, the Debtor will not have the funds necessary to pay expenses critical to the continued operation of its business, such as payroll, utilities, and post-petition vendor obligations. In that event, its business will have to shut down, the Debtor's employees will lose their jobs, and the value of the Debtor's assets and business will plummet. Unless the relief sought in this Motion is granted, the Debtor will have no hope of maintaining the value of its assets long enough to effectuate an orderly sale or reorganization. In light of the Debtor's emergent need to use cash collateral, as well as the Lenders' willingness to consent to such

7

usage upon the terms and conditions set forth in the proposed Interim Order, the Debtor requests that the Court hold a hearing on this Motion as soon as practicable.

## BANKRUPTCY RULE 6003 IS SATISFIED

15. Bankruptcy Rule 6003 provides that a bankruptcy court may approve a motion to "use, sell, [or] lease" property of the estate, or to "pay all or part of a claim that arose before the filing of the petition," prior to twenty-one (21) days after the filing of the petition, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Immediate and irreparable harm exists where, as is the case here, the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't. Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in the context of Bankruptcy Rule 4001). The Debtor submits that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, as described herein, and that cause exists under Bankruptcy Rule 6003 for the Court to grant immediate relief.

## WAIVER OF NOTICE AND STAY REQUIREMENTS

16. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.

## RESERVATION OF RIGHTS

17. Other than as to the Lenders, nothing in this Motion, nor any payment made pursuant to the relief sought herein, if granted, is intended or should be construed as an admission as to the validity, priority or amount of any claim against the Debtor, a waiver of the Debtor's right to dispute

any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code and the Debtor expressly reserves its rights with respect thereto.

## NOTICE

18. Notice of this Motion will be given to (i) the Office of the United States Trustee for the Western District of New York, (ii) counsel for the Lenders, (iii) the Debtor's twenty (20) largest unsecured creditors as set forth in the list filed with the Debtor's petition, (iv) all required governmental agencies and (v) the Debtor's cash management banks. In light of the nature of the relief requested herein, the Debtor submits that no further notice is required.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an interim order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, setting a hearing to consider entry of a final order on this Motion, and granting such other and further relief as the Court deems appropriate.

Dated: March 2, 2016  
        Syracuse, New York

Respectfully Submitted,

BOND, SCHOENECK & KING, PLLC

By:     /s/ Stephen A. Donato
Stephen A. Donato, Esq.
Camille W. Hill, Esq.,
Office and Post Office Address:
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Fax: (315) 218-8100
Email: sdonato@bsk.com
      chill@bsk.com

and

BUCKLEY KING
Harry W. Greenfield, Esq., *Pro Hac Vice*
Jeffrey Toole, Esq., *Pro Hac Vice*
Heather E. Heberlein, Esq., *Pro Hac Vice*
Office and Post Office Address:
1400 Fifth Third Center
600 Superior Avenue, E.
Cleveland, Ohio 44114
Tel: (216) 363-1400
Fax: (216) 579-1020
Email: greenfield@buckleyking.com
toole@buckleyking.com
heberlein@buckleyking.com

*Proposed Counsel to the Debtor and Debtor in Possession*

1920916v1