UNITED STATES BANKRUPTCY COURT
WESTERN DISCTRICT OF NEW YORK

In re:

FLOUR CITY BAGELS, LLC,[1]

Case No. 2-16-20213 (PRW)
Chapter 11 Case

Debtor.

**APPLICATION TO EMPLOY AND RETAIN (A) PHOENIX MANAGEMENT SERVICES, LLC AS FINANCIAL ADVISORS, AND (B) PHOENIX CAPITAL RESOURCES AS INVESTMENT BANKERS FOR, THE DEBTOR IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

Flour City Bagels, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby applies (the "Application") for an the entry of an order (i) authorizing the employment and retention of (A) Phoenix Management Services, LLC (referred to herein as "PMS"), as the Debtor's financial advisors and (B) Phoenix Capital Resources (referred to herein as "PCR") as the Debtor's investment bankers pursuant to § 327 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), effective *nunc pro tunc* to the Petition Date (defined below). In support of its Application, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 9515.

#38092195 v2
CO\5246000.2

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtor's chapter 11 case and this Application is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409. Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 provide the bases for the relief sought herein.

## BACKGROUND

2. On March 2, 2016 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor, as debtor in possession, continues to operate its business and manage its properties and assets.

3. The Debtor is a New York limited liability company that operates 32 bakeries that serve authentic "New York Style" bagels, coffee, drinks, soups, salads, sandwiches, fresh fruit, and a variety of other related items. Its bakeries are located in three tightly-clustered geographic regions—Rochester (13 bakeries), Albany (13 bakeries), and Syracuse (6 bakeries). The Debtor's headquarters are in Fairport, New York.

## RELIEF REQUESTED AND REASONS THEREFOR

4. By this Application, the Debtor requests that this Court enter an Order authorizing the Debtor to employ and retain (a) PMS as its financial advisors and (b) PCR as its investment bankers, effective *nunc pro tunc* to the Petition Date. The Debtor originally engaged PMS in August 2015 to assist the Debtor in its financial affairs, and proposes to engage PMS for purposes of this chapter 11 case on substantially the same

terms and conditions, except as those terms or conditions may be updated or refined as set forth in this Application. As part of the original engagement, Mr. Richard Szekelyi, a Managing Director of PMS, served as the Debtor's Chief Restructuring Advisor. A true and correct copy of the written retention agreement between PMS and the Debtor dated August 4, 2015, as supplemented by that letter dated February 19, 2016, outlining those terms and conditions, is attached to this Application as Exhibit A. The Debtor has agreed to all of the terms and conditions of that written retention agreement.

5. The Debtor originally engaged PCR, an affiliate of PMS, in November 2015, to assist the Debtor in obtaining either senior secured debt, unsecured debt or subordinated or second lien term debt and/or to market the assets of the Debtor for sale to a third party as a going concern. The Debtor proposes to engage PCR for purposes of this chapter 11 case on substantially the same terms and conditions, except as those terms or conditions may be updated or refined as set forth in this Application. A true and correct copy of the written retention agreement between PCR and the Debtor dated November 30, 2015, outlining those terms and conditions, is attached to this Application as Exhibit B.

6. The Debtor has selected PMS as its financial advisors and PCR as its investment bankers in this chapter 11 case because of their respective experience in and knowledge of management, operational and financing issues facing distressed and insolvent businesses. PMS is well-suited for the type of representation required by the Debtor, insofar as PMS possesses substantial expertise in, among other things, dealing with the various financial issues facing distressed and insolvent businesses of similar size and type as the Debtor's business.

3

#38092195 v2
CO\5246000.2

Case 2-16-20213-PRW    Doc 88    Filed 03/10/16    Entered 03/10/16 12:03:50    Desc Main
Document    Page 3 of 9

7. In order to maintain continuity, Mr. Szekelyi shall continue to serve as the Debtor's Chief Restructuring Advisor. While Mr. Szekelyi has been granted certain limited powers to, among other things, enter into leases, lease extensions, and sign checks on the Debtor's behalf in furtherance of PMS's and his duties in advising and assisting the Debtor, neither Mr. Szekelyi nor PMS have and shall not serve as an officer, director or manager of the Debtor LLC or its sole member and all final decision-making authority shall rest solely with Kevin Coyne, who has been the manager of the Debtor's sole member (HOT, LLC) since August 4, 2015. Mr. Michael Jacoby, a Senior Managing Director of PMS, will serve as oversight partner for this engagement. Mr. Szekelyi and Mr. Jacoby have considerable experience as turnaround managers, management consultants, and financial advisors, providing leadership and/or management for underperforming companies desirous of change. PMS and PCR professionals have been successfully engaged by in chapter 11 cases filed in, but not limited to, the United States Bankruptcy Court for the Northern District of Ohio, the Eastern District of New York, the District of Delaware, and the Eastern District of Michigan.

8. PMS and PCR have indicated a willingness to represent the Debtor in its chapter 11 case.

# SCOPE OF SERVICES

A. **Phoenix Management Services, LLC**

9. The Debtor seeks to employ PMS to provide the following services:

a. To provide oversight of the Debtor's operations and management. All Debtor's personnel shall report to PMS and PMS shall report to Kevin Coyne;

b. Monitor cash management of the Debtor to assure cash is being properly handled, including review of daily cash reports, monitoring banking activities, and reviewing disbursements for propriety;

c. To perform a review and assess accounting for inventories and other assets to determine whether values are reasonable in respect to offers to purchase the assets of the Debtor;

d. To participate in communications with the senior lender;

e. To assist in preparation of schedules, documents, operating reports and other matters to be filed and to testify as a witness, if so requested, in this case;

f. To assist with the coordination of a proposed sale under section 363 of the Bankruptcy Code or as part of a plan of reorganization; and

g. To perform other duties as are mutually agreed.

B. **Phoenix Capital Resources**

10. The Debtor seeks to employ PCR to provide the following services:

a. To conduct such due diligence as deemed appropriate on the Debtor and the industry in which it operates, and prepare, in conjunction with the Debtor's owners and senior management, a confidential informational memorandum concerning the Debtor;

b. To develop, update and review with the Debtor on an ongoing basis a list of parties that might be interested in a Transaction (as defined in the engagement letter) with the Debtor; and

c. To consult with and advise the Debtor concerning Transaction opportunities that have been identified by either: The Debtor, or PCR, assist the Debtor and its accountants and attorneys in managing

the process involved with any restructuring, valuation, negotiating and closing of a Transaction, and advise on strategic alternative that may be options for the Debtor.

## PROPOSED ARRANGEMENT FOR COMPENSATION

A.     **Phoenix Management Services, LLC**

11.    It is necessary and essential that the Debtor, as debtor in possession, employ PMS on an hourly basis to render the foregoing professional services because of the financial and operational expertise that will be required.

12.    Subject to the Court's allowances, PMS will charge the Debtor for its consulting services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered and for the firm's out of pocket disbursements incurred in connection therewith. The current hourly rate charged by Richard Szekelyi, the PMS professional who will provide the majority of the services to be rendered to the Debtor, is $455. Other PMS personnel will be used on this engagement as their particular skills are required. PMS bills one half of its standard billing rates for time incurred by its professionals for travel outside of Cleveland, Ohio.

13.    At the time PMS was first engaged in August, 2015, it requested a retainer from the Debtor in the amount of $25,000 (the "Deposit"), which the Debtor delivered. PMS shall continue to hold the Deposit during this chapter 11 case. The Debtor understands that the Deposit will not be applied or credited to amounts due from the Debtor but will be returned to the Debtor once all amounts due to PMS are paid in full, subject to a holdback to fund any indemnification claims.

14.    The Debtor understands that PMS will bill its reimbursable expenses as charged generally to bankruptcy and non-bankruptcy clients alike, and in accordance with

6

#38092195 v2
CO\5246000.2

Case 2-16-20213-PRW    Doc 88    Filed 03/10/16    Entered 03/10/16 12:03:50    Desc Main
Document    Page 6 of 9

applicable guidelines. PMS is customarily reimbursed for all expenses incurred in connection with its representation of a client in a given matter. Such expenses include, without limitation, transportation of PMS's personnel, employees or associates on business related to its representation of the Debtor, costs of hotels and meals, etc., and facsimile, telephone and out-of-pocket research expenses.

15. The hourly fees incurred by PMS shall be invoiced to the Debtor on a monthly basis. PMS shall submit fee applications to this Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy rules, Local Bankruptcy Rules and orders of this Court, including any applicable cash collateral order.

**B.  Phoenix Capital Resources**

16. At the time PCR was first engaged in November 2015, PCR requested an initial fee from the Debtor in the amount of $30,000, of which $10,000 was due upon the signing of the engagement letter, $10,000 was due on December 15, 2015, and $10,000 was due on January 15, 2016 (the "Initial Fee"). The Debtor delivered the installments of the Initial Fee when due. The Debtor also agreed to pay PMS $10,000 per month beginning on February 15, 2016, and every 15th day thereafter until the earlier of the closing of a Transaction or the termination of the engagement agreement (the "Additional Fees"). The Additional Fees shall be credited against the Transaction Fee to the extent earned (described below). The Debtor delivered the first $10,000 Additional Fee that was due on February 15, 2016 to PCR. Further, the Debtor has agreed to pay to PCR a transaction fee (the "Transaction Fee") equal to the greater of (a) $175,000, or (b) three percent (3.0%) of a Transaction Value up to $6,000,000; plus four percent (4.0%) of any

7

#38092195 v2
CO\5246000.2

incremental proceeds from a Transaction Value between $6,000,001 and $7,500,000 (*i.e.*, the proceeds between $6,000,001 and $7,500,000); plus six and one half percent (6.5%) of any incremental proceeds from a Transaction Value between $7,500,001 and $9,000,000 (*i.e.*, the proceeds between $7,500,001 and $9,000,000); plus eight percent (8.0%) of any incremental proceeds from a Transaction Value between $9,000,001 and $9,500,000 (*i.e.*, the proceeds between $9,000,001 and $9,500,000); plus ten percent (10%) of any incremental proceeds from a Transaction Value greater than $9,500,001 (*i.e.*, the proceeds above $9,500,001).

17. The Debtor understands that PCR will bill its reimbursable expenses as charged generally to bankruptcy and non-bankruptcy clients alike, and in accordance with applicable guidelines. PCR is customarily reimbursed for all expenses incurred in connection with its representation of a client in a given matter. Such expenses include, without limitation, transportation of PCR's personnel, employees or associates on business related to its representation of the Debtor, costs of hotels and meals, etc., and facsimile, telephone and out-of-pocket research expenses.

18. The engagement with PCR ends at the earlier of the date of closing of a transaction or July 31, 2016, provided that it will extend for an additional three months unless the Debtor or PCR serves a notice of termination at least 30 days before July 31, 2016.

**CONNECTIONS WITH THE DEBTOR, ITS CREDITORS, OR ANY OTHER PARTY IN INTEREST, AND THEIR RESPECTIVE ATTORNEYS AND ACCOUNTANTS**

19. The Debtor is informed and believes that PMS and PCR, as well as their professionals, have no connection with the Debtor, its creditors, any other parties-in-

8

interest, or their respective attorneys and accountants, other than through the consulting and advisory services performed since PMS's original engagement, except as set forth in the Affidavit of Richard J. Szekelyi (relating to PMS) and the Affidavit of Michael E. Jacoby (relating to PCR), which are attached to this Application collectively as Exhibit C.

20. The Debtor is informed, and believes, that PMS, PCR, and their professionals do not hold or represent any interest adverse to the Debtor, the Debtor's estate, or its creditors or equity security holders with respect to the matters on which each seeks to be employed, and that PMS and PCR are "disinterested persons" within the meaning of § 101(14) of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully moves this Court for entry of an Order (i) authorizing the retention and employment of (a) PMS as the Debtor's financial advisor and (b) PCR as the Debtor's investment banker, effective *nunc pro tunc* to the Petition Date, and (ii) granting such other and further relief as is just and proper.

FLOUR CITY BAGELS, LLC

By: HOT, LLC,
Its Sole Member

By: _____
Kevin Coyne, Manager

1923568_2

#38092195 v2
CO\5246000.2

9