UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

FLOUR CITY BAGELS, LLC, [1]

Debtor.

Case No. 16-20213
Chapter 11 Case

# DECLARATION OF MICHAEL E. JACOBY AND SUMMARY OF AUCTION SALE

Michael E. Jacoby, under penalty of perjury, hereby declares and states as follows:

1. I am a Senior Managing Director of Phoenix Capital Resources ("PCR"), with an office located at 110 Commons Court, Chadds Ford, Pennsylvania 19317-9716. I am a Certified Turnaround Professional, Certified Cash Manager, Certified Management Consultant, a Fellow of the American College of Bankruptcy, and I hold the Series 79 license from FINRA. I have been active in the crisis management, turnaround and bankruptcy arena with PCR and its affiliates since 1992 (24 years). I have sold numerous companies and assets both inside and outside of bankruptcy, have been qualified as an expert witness in bankruptcy courts, and have run numerous 363 sales and over-bid auctions in bankruptcy courts nationwide.

2. I make this Declaration in order to advise the Court of the results of the auction sale (the "Auction") of substantially all of the assets (the "Assets") owned by

---

[1] The last four digits of the Debtor's federal tax identification number are 9515.

2717763.1

debtor Flour City Bagels, LLC (the "Debtor") that was conducted on June 28, 2016 at the Rochester, New York office of the Debtor's counsel, Bond, Schoeneck & King, PLLC.

## BACKGROUND

### A. Procedural History

3. The Debtor is a limited liability company organized under the laws of the State of New York. Its headquarters are located in Fairport, New York. The Debtor operates 32 bakeries that serve authentic "New York Style" bagels, coffee, drinks, soups, salads, sandwiches, fresh fruit and a variety of other related items. Its bakeries are located in three tightly-clustered geographic regions – Rochester (13 bakeries), Albany (13 bakeries) and Syracuse (6 bakeries). The Debtor's first bakery opened in 1983 in Troy, New York (as a flagship Bruegger's bakery). Its first bakery in Rochester opened in 1990, followed in 1993 by its first bakery in Syracuse and its commissary in Rochester, at which it produces bagels for all of its 32 bakeries.

4. Prior to the Petition Date, the Debtor and Bruegger's Enterprises, Inc., Bruegger's Franchise Corporation and LDA Management Company, Inc. (collectively, "Bruegger's") were parties to 32 franchise agreements and other related agreements (collectively, the "Bruegger's Agreements"), which have been amended from time, and which governed the Debtor's operation of the 32 Bruegger's bakeries in New York State.

5. On March 2, 2016 (the "Petition Date"), the Debtor commenced the captioned case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the

2

Western District of New York. Since the Petition Date, the Debtor has remained in possession and control of its assets and business operations as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On April 29, 2016, the Debtor filed the Debtor's Motion for Entry of Order (I) Approving Bidding Procedures for the Sale of the Debtor's Assets, Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers; (II) Setting Various Dates Related to the Sale Procedures; (III) Approving Certain Bid Protections: and (IV) Granting Related Relief (the "Sale Procedures Motion") [Docket No. 233].

7. On May 2, 2016, the Court entered an Order Authorizing the Debtor to Employ and Retain Phoenix Capital Resources as Investment Bankers for the Debtor in Possession *Nunc Pro Tunc* to the Petition Date (the "PCR Retention Order") [Docket No. 254] pursuant to which PCR was appointed to act as the business broker to the Debtor for the purpose of marketing the Assets for sale to prospective purchasers.

8. On May 20, 2016, the Court entered an Order Approving Sale Procedures and Bidding Procedures (the "Sale Procedures Order") [Docket No. 337], which, among other things, (1) set deadlines and approved requirements and procedures for prospective purchasers to submit competing bids for the Assets, (2) scheduled an auction sale of the Assets (the "Auction Sale"), (3) set the hearing date to approve the sale of the Assets to a successful bidder and (4) approved the form of the sale notice.

9. On June 8, 2016, the Court entered an Amended Order Approving Sale Procedures and Bidding Procedures (the "Amended Sale Procedures Order") [Docket No. 360], which, among other things, (1) extended deadlines for prospective purchasers to submit competing bids for the Assets, (2) rescheduled the Auction Sale, (3)

3

rescheduled the hearing date to approve the sale of the Assets to a successful bidder and (4) approved the form of the amended Sale Notice. The Amended Sale Procedures Order established a Qualified Bid deadline of June 22, 2016, an Auction Sale date of June 28, 2016 at 10:30 a.m. (Eastern Time) and a sale hearing date of July 21, 2016 at 9:00 a.m. (Eastern Time).

10. On June 17, 2016, the Debtor, United, Canal, Bruegger's and the Committee agreed to further extend the Bid Deadline to 12:00 noon on June 24, 2016 in order to give all potential bidders additional time to qualify their bids.

### B. Marketing of the Debtor's Assets

11. PCR has been engaged in marketing the Debtor's assets since November 2015. Immediately after its appointment in this case, PCR updated the Debtor's electronic data room, organized additional due diligence materials and updated and implemented PCR's marketing campaign.

12. PCR has also been managing the dissemination, negotiation and execution of non-disclosure agreements ("NDAs") with prospective purchasers.

13. Upon the execution of an NDA, PCR provided a prospective purchaser with access to a secure, online data room. The data room was established to assist prospective purchasers with their due diligence efforts. PCR assisted the Debtor in assembling and updating voluminous documentation pertaining to the Debtor's assets, operations, financial information and bankruptcy filings, and posted such documentation in the secure data room. In addition, PCR prepared a detailed 46-page Confidential Information Memorandum concerning the Debtor's assets, business operations and financial information that was posted to the secure data room.

4

14. Since the date of its appointment, PCR has been engaged in significant efforts to market the Debtor's assets and business as a going concern in order to maximize value and preserve local jobs, as well as marketing the assets for sale separately as a liquidation, for the benefit of the Debtor's creditors and bankruptcy estate. PCR has undertaken a broad range of activities to market the assets, including, without limitation, direct mail and email correspondence, the placement of advertisements in franchise and restaurant industry publications and media with general circulations, telephone conferences, and on-site meetings and tours of the Debtor's bakeries in Rochester, Syracuse and Albany, New York with prospective purchasers.

15. As part of its marketing program, PCR prepared a one-page "teaser" titled "Summary of Opportunity" setting forth an overview of the Debtor's assets and operations, investment highlights and general sale/bid information and distributed that statement by electronic mail to 217 potential financial buyers and intermediaries and 68 potential strategic buyers. PCR identified these potential buyers thru its own proprietary database, industry publications and listings, referrals from industry participants and Bruegger's, and responses to our press release. PCR has been reached out to all of these strategic and financial buyers on numerous occasions to solicit interest. In addition, PCR contacted all of the prospects that the Debtor had communication with in the 3 months prior to PCR's retention.

16. In addition, shortly after the Petition Date, PCR issued a Press Release describing the asset sale process and the Debtor's assets to approximately 1,400 recipients (primarily magazines, web publications, and news service/syndicates) in the food and beverage industry.

17. Throughout the marketing process, beginning on May 3, 2016 and continuing through and including June 15, 2016, PCR has provided weekly written Status Reports to the Debtor's counsel, who in turn has provided the information to counsel for the secured lenders and the Committee.

18. Through the June 24, 2016 Bid Deadline, PCR's efforts resulted in:

285 parties receiving the Summary and an NDA;

41 parties executing non-disclosure agreements regarding the proposed sale transaction, receiving the CIM, and obtaining access to the secure electronic data room to conduct due diligence;

4 parties providing preliminary indications of interest;

Numerous parties traveling to visit the Debtor's bakery locations, two of which met with the Debtor's management; and

4 parties submitting Asset Purchase Agreements prior to the bid deadline.

## THE AUCTION

19. As of the June 24, 2016 Bid Deadline, the Debtor received the following bids for the Assets:

   a. a Qualified Bid of $4,500,000.00 by Le Duff America, Inc. ("Le Duff");

   b. a Qualified Bid of $2,165,000.00 by SuSu, LLC ("SuSu");

   c. a Qualified Bid of $2,100,000.00 by Graywood MRM, LLC ("Graywood"); and

   d. a Non-Qualified Bid of $7,582,000.00 by Premier New York Bagel Company, LLC ("Premier"). Premier's bid was not a Qualified Bid because it was not accompanied by the required deposit, was not an irrevocable bid and was contingent upon the approval of a third party to provide virtually all or all of the financing.

6

20. In addition, the Sale Procedures Order provided that secured creditors United Capital Business Lending, Inc. n/k/a Bridge Funding, Inc. ("United") and Canal Mezzanine Partners II, LP ("Canal") were deemed Qualified Bidders and were authorized to credit bid the amounts of their respective secured debts in this case.

21. The Auction was scheduled to begin at 10:30 a.m. on June 28, 2016 at the Rochester, New York law offices of Bond Schoeneck & King PLLC.

22. Upon learning of Le Duff's proposed Purchase Price at BSK's office prior to the start of the auction, both SuSu and Graywood pulled their offers and did not attend the auction.

23. The participants present in person at the Auction were as follows:

   a. For the Debtor: Harry W. Greenfield, Esq. and Stephen A. Donato, Esq.; Richard Szekelyi of Phoenix Management Services, LLC; Michael Jacoby and Patrick Bellot of PCR;

   b. For United: Patricia Elvin and Christopher Desiderio, Esq.;

   c. For Canal: Kevin Coyne, and Daniel Swetnam, Esq.;

   d. For the Committee: Kenneth Gordon, Esq.

   e. For Le Duff: Claude Bergeron, Robert Parette, Michael Einbinder, Esq. and Jeffrey A. Dove, Esq.;

24. The proceedings were recorded by Alliance Court Reporting.

25. The bid submitted by Le Duff in the amount of $4,500,000.00 was designated as the Prevailing Bid at the commencement of the Auction. The Auction proceeded for approximately 3.5 hours, with numerous breaks taken for parties to confer. At the conclusion of the Auction, the Debtor had the following offers:

a. <u>Cash</u>: Le Duff's cash bid of $4,750,000.00; and

   b. <u>Combination Cash and Credit Bid</u>: Canal's bid of $5,000,000.00, consisting of (i) a cash bid in the amount of $1,300,000.00 and (ii) a credit bid in the amount of $3,700,000.00.

26. The Debtor, after consulting with its secured lenders and the Committee, designated Canal, with its combination of credit bid and cash in the amount of $5,000,000.00, as the Successful Bidder for the Assets.

Dated: June 30, 2016
        Chadds Ford, Pennsylvania

_____
Michael E. Jacoby

8