UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:  Case No. 16-20213

      **FLOUR CITY BAGELS, LLC**  Chapter 11

      Debtor.

**OBJECTION TO DEBTOR'S MOTION FOR ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004: (A)(i) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS TO CANAL MEZZANINE PARTNERS II, LP, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, PURSUANT TO THE TERMS OF AN ASSET PURCHASE AGREEMENT, (ii) APPROVING THE ASSET PURCHASE AGREEMENT WITH CANAL MEZZANINE PARTNERS II, LP AND (iii) AUTHORIZING DEBTOR TO CONSUMMATE ALL TRANSACTIONS RELATED TO THE PROPOSED SALE; AND (B) AUTHORIZING DEBTOR TO ASSUME CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ASSIGN SUCH CONTRACTS AND LEASES TO CANAL MEZZANINE PARTNERS II, LP PURSUANT TO 11 U.S.C. §§365(a), (b) AND (c) AND BANKRUPTCY RULE 6006(e)(1)**

MRM Real Estate Fund I, LLC, ("MRM") by and through its counsel, Harris Beach, PLLC, hereby submits this Opposition (the "Opposition") to the Debtor's Motion for an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 6004: (A) (i) Authorizing the Sale of Substantially All of Debtor's Assets to Canal Mezzanine Partners II, LP, Free and Clear of All Liens, Claims, Interests and Encumbrances, Pursuant to the Terms of an Asset Purchase Agreement, (ii) Approving the Asset Purchase Agreement With Canal Mezzanine Partners II, LP and (iii) Authorizing Debtor to Consummate All Transactions Related to the Proposed Sale; and (B) Authorizing Debtor to Assume Certain Executory Contracts and Unexpired Leases and Assign Such Contracts and Leases to Canal Mezzanine Partners II, LP Pursuant to 11 U.S.C. §§365(a), (b) and (c) and Bankruptcy Rule 60006(e)(1), (the "Sale Motion") and respectfully represents as follows:

1. MRM is a Creditor of Flour City Bagels, LLC (the "Debtor") pursuant to an Investment and Consulting Services Agreement dated September 1, 2014, wherein MRM loaned the Debtor $350,000.00 pursuant to the terms contained therein. On June 10, 2016, MRM filed a Proof of Claim in the amount of $398,983.00 (the "Proof of Claim"). No objections to the Proof of Claim have been filed.

2. In addition to its status as a creditor of the Debtor, MRM participated in the sales process as a potential purchaser for the Debtor's assets. MRM executed a Non-Disclosure Agreement and conducted due diligence to formulate an offer to purchase the Debtor's assets.

3. As outlined in the Declaration of Michael E. Jacoby and Summary of Auction Sale filed on June 30, 2016 (the "Jacoby Declaration" at Dkt. 405), MRM partnered with another investor to form Graywood MRM, LLC, to submit a qualifying bid in the amount of $2,100,000.00 for the Debtor's assets, and allocated an additional $400,000.00 for cure costs.

4. Matthew Marino, President of MRM attended the auction on June 28, 2016 (the "Auction") at the Rochester, New York law offices of Bond, Schoeneck & King PLLC (the "BS&K Office"). While Mr. Jacoby states that "upon learning of Le Duff's proposed purchase price at BS&K's Office prior to the start of the auction, both SuSu and Graywood pulled their offers and did not attend the auction" such a statement does not accurately reflect the events at the Auction. (See Jacoby Affidavit at paragraph 22).

5. Mr. Marino was present at the time of the Auction and was sequestered in a separate conference room, away from the ongoing discussions and negotiations that took place between the Debtors and its secured lenders. After approximately 1.5 to 2 hours of being sequestered in a conference room without any meaningful participation in the Auction, Mr. Marino left BS&K's Office.

6. As outlined in the Jacoby Affidavit, Le Duff America, Inc. ("Le Duff") made a cash bid of $4.75 million for the Debtor's assets. Upon information and belief, $2 million of that bid is allocated to unsecured leasehold interests in the various bakery locations, and therefore those funds would be available for the estate, and general unsecured creditors such as MRM. As a result, MRM believes that Le Duff's cash bid of $4.75 million is the highest and best offer.

7. While the Debtor submits that the cash and credit combination offer from Canal in the amount of $5 million is the highest and best offer and should be designated as the successful bid, that bid only provides $1.3 million to the estate. Moreover, upon information and belief, there is a post closing repayment arrangement between United Capital Business Lending, Inc. n/k/a Bridge Funding, Inc. ("United") and Canal Mezzanine Partners II, LP, ("Canal") that was not disclosed at the Auction and has still not been disclosed. Upon information and belief, the terms of that arrangement were still being negotiated well after the Auction.

8. This lack of transparency during and after the Auction is problematic at best; however, when combined with the inherent conflicts of interest that exist in this case, it completely undermines the sale process. During the Auction, Kevin Coyne acted as the representative for both the Debtor and Canal, and there was no independent fiduciary watching out for the estates and creditors such as MRM.

9. It is simply impossible for Mr. Coyne to fulfill his fiduciary duties to both the Debtor and Canal at the same time. On behalf of Canal, he has a vested interest in acquiring the Debtor's assets and minimizing Canal's losses. On behalf of the Debtor, Mr. Coyne is a fiduciary for all creditors and must maximize the value for the estate. This conflict is clearly visible from the Asset Purchase Agreement ( the "APA") which was signed by Kevin Coyne in

his capacity as both the Debtor/Seller and the Buyer. Which hat was Mr. Coyne wearing when he negotiated the APA with himself?

10. The lack of disclosure and conflict of interest are further magnified by the Debtor's "bending" of the rules to accommodate Canal during the Auction process. For example, while all other qualified bidders needed to provide a 10% deposit in advance of the Auction to comply with the Bidding Procedures Order, Canal was to pay its 10% deposit within three days <u>after</u> execution of the APA. Such rules were made to insure the Auction was a fair and equitable process where all bidders were held to the same standards and requirements. Instead, it became a secretive process where agreements were cut behind closed doors. As of the date of filing this Objection, these "deals" were still not disclosed to the interested parties or the Bankruptcy Court. Such actions undermine the entire sale process in this case (and other cases) and MRM respectfully submits they should not be sanctioned by the Court.

11. MRM believes that a plan of reorganization that allows creditors a much larger recovery over a period of time is feasible and may propose such a plan once the exclusivity period expires. MRM also notes the appointment of a Trustee pursuant to 11 U.S.C. §1104 may be appropriate in this case to insure the integrity of the sale process and bankruptcy system are not being compromised.

12. As a result of the foregoing, MRM respectfully submits that the Court should deny the Sale Motion and should approve the sale to Le Duff, and grant such other relief as the Court deems just and proper.

WHEREFORE, MRM respectfully requests that the Court deny the Sale Motion, and grant such other and further relief as the Court deems just and proper.

279392 2863372v1

Dated: July 14, 2016.

*Wendy A. Kinsella*
Wendy A. Kinsella, Esq. (Bar Roll No. 508699)
Harris Beach PLLC
333 W. Washington St., Ste. 200
Syracuse, NY 13202
Telephone: (315) 423-7100
Facsimile: (315) 422-9331
Email: wkinsella@harrisbeach.com
bkemail@harrisbeach.com