# EXHIBIT "A"

# EXHIBIT "A"

BRUEGGER'S FRANCHISE CORPORATION
12201 Merit Drive, Suite 900
Dallas, TX 75251


March 27, 2017


Flour City Bagels, LLC
Debtor-in-Possession

Re: Letter of Intent - Sale and Purchase of Assets and Plan of Reorganization

Dear Mr. Mistretta:

This letter of intent ("LOI") sets out the basic terms agreed upon between Flour City Bagels, LLC, Debtor-in-Possession ("DIP"), Bruegger's Franchise Corporation ("BFC"), Bruegger's Enterprises, Inc. ("BEI"), Bridge Funding Group, Inc., f/k/a United Capital Business Lending, Inc. ("Bridge") and Canal Mezzanine Partners, II, LP ("Canal") regarding the proposed purchase and sale of certain assets (the "Purchased Assets") of Bruegger's® restaurants (including a commissary) in the State of New York (the "Restaurants") owned and operated by DIP at the locations listed on the attached Exhibit A (the "Premises") pursuant to a Plan of Reorganization (the "Plan") to be filed jointly by DIP, BEI, BFC, Bridge and Canal with the United States Bankruptcy Court, Western District of New York (the "Court") in the DIP's bankruptcy proceeding Case No. 16-20213-PRW (the "Proceeding") pursuant to which an affiliate of BEI ("Buyer") will acquire the Purchased Assets and become a franchisee of BFC upon the terms and conditions described in this LOI.

The purpose of this letter is to give certainty to all parties as to what the definitive Plan, Asset Purchase Agreement (the "APA"), Franchise Agreement and Purchase Option Agreement (POA) will contain concerning the points set forth herein. However, this LOI is non-binding and signing this LOI does not obligate any party to enter into any of the agreements described herein until the final mutually-agreeable documents are prepared and executed and a final non-appealable order is signed by the Court approving the Plan.

This LOI is in furtherance of settlement communications and is subject to Rule 408 of the Federal Rules of Evidence. Notwithstanding the foregoing, after this LOI has been executed by all parties, any of the parties hereto may submit this LOI to the Court or other parties in the Proceeding to provide information concerning the transaction contemplated in this LOI.

The parties agree as follows:

1.  Asset Purchase Agreement and Other Agreements. The form of the APA will be substantially the same form filed by BEI on December 20, 2016 with modifications consistent with the terms of this LOI. The APA will be attached to a Plan which will

CO\5526550.5

be in substantially the same as the form previously submitted by BEI on or about December – 2016, with modifications consistent with the terms of this LOI. The purchase price for the Purchased Assets, as well as certain other key terms that will be included in the APA, together with other agreements are set forth in Exhibit B attached hereto. It will also include the following terms:

a.   A description of the Purchased Assets as well as assets excluded from the sale.

b.   A calculation of the purchase price of the Purchased Assets.

c.   A description of the leases for the Premises (the "Leases") and the Commissary as well as the fork lift equipment lease that Buyer will assume.

d.   The conditions to closing, the date of the closing and a description of the documents and other items to be delivered by the parties hereto at the closing.

e.   DIP will give Buyer the opportunity to hire current employees of the Restaurants, if they are interested in working for Buyer. Buyer must give said employees credit for time in service with DIP for purposes of Buyer's benefit plans.

f.   The Buyer, BFC and BEI will prepare a budget (the "Capital Budget") for capital improvements. i.e. installation of freezers, hot food equipment, new point of sale and back office systems, repairs and maintenance, refreshing of the Restaurants along with sufficient working capital reserves that requires that no less than $1 million be spent on such Capital Improvements (inclusive of equipment lease expenditures) consistent with the allocation and time schedule (the "Capital Expenditures") to be determined by Buyer in its sole discretion. The Capital Budget, which may be changed from time to time, will not be subject to Canal's approval. BFC has provided a preliminary draft of the Capital Budget to Canal and BFC will provide an updated Capital Budget to Canal by April 4, 2017. Buyer will also provide Canal with updates on the Capital Budget on a quarterly basis along with the other quarterly financial information. Canal may inquire of certain items shown on the Capital Budget with Paul Carolan (referred to as the "Buyer Contact").

g.   All vendor and supplier rebates or similar remuneration resulting from the Capital Expenditures or from Buyer's ongoing operations shall be paid directly to Buyer in the same manner as such rebates or remuneration is paid to BFC's franchisees pursuant to their franchise agreements.

2.      Franchise Documents. Prior to the execution of the APA, BFC will provide Buyer with a Franchise Disclosure Document ("FDD") and Buyer will execute and return the Acknowledgment of Receipt for the FDD. Upon the "Effective Date" as defined in the APA (i.e. the closing of the sale, which is expected to be on or about July 1, 2017), along with the APA, the parties (where appropriate, but not Canal), will enter into:

    a.      A Franchise Agreement for each of the Restaurants in the 2017 standard form offered to new BFC franchisees for an initial term of ten (10) years, provided however, that the standard five percent (5%) royalties due to BFC thereunder shall be waived until such time as the Buyer and BFC determine in their sole discretion that the Buyer shall make such royalty payments, provided however, that such royalty payments shall commence no later than the sale to a third party of the Buyer or substantially all of the assets of Buyer, and further provided that if the Buyer sells any of the Premises, then payment with respect to such Premises shall commence upon such sale. The Initial Franchise Fees for the Premises that are part of the Purchased Assets will be waived. BFC shall be obligated to cause Buyer to make the Capital Expenditures in accordance with the Capital Budget and the obligations set forth in this Section 2(a) shall further be covenants included in the Canal POA (defined in Exhibit B).

    b.      Agreements Regarding Leased Location By Tenant which is an agreement between Buyer, BFC and each of Buyer's landlords for each of the Premises, a form of which will be attached to the APA.

    c.      The Buyer, BFC and BEI will prepare a pro forma operating budget for the first two years after the Effective Date (the "Operating Budget") to be determined by Buyer in its sole discretion. The Operating Budget, which may be changed from time to time, will not be subject to Canal's approval. BFC has provided a preliminary draft of the Operating Budget to Canal and BFC will provide an updated Operating Budget to Canal by April 4, 2017.

    d.      Buyer will not be granted a development area or territory at this time.

3.      Finalization of Documents. During the term of this LOI, the parties will diligently and swiftly pursue modifications and finalization of the Disclosure Statement, Plan, APA and related documents consistent with this LOI. Since the Plan will be a joint plan, all parties hereto must approve the final form of the Plan and accompanying documents before submission.

4.      Inspections. During the term of this LOI, representatives of BEI, BFC and Buyer will have the right to physically inspect the Restaurants, Commissary and the Purchased Assets to determine if they are in satisfactory working condition, conduct quality control assessments, and give guidance to operations and procedures; provided, however, that any such inspections shall be performed in the presence of a designated DIP representative at times and locations that are mutually agreeable. While this LOI remains in effect, DIP will also provide BEI, BFC, and

Buyer with operating data and financial information related to the Restaurants and the Commissary as they may reasonably request. Buyer will have the right to inspect the books and records of DIP. Buyer understands that it will be purchasing the Purchased Assets on an "as is" "where is" condition unless the APA states otherwise.

5.    Leases and Premises.    After submission of the Plan and Disclosure Statement, representatives of BEI, BFC and Buyer will have the right to discuss the terms of the Leases for the Premises, negotiate extensions or modifications to the Leases, as well as assignments thereof to be effective on the Effective Date.

6.    Expiration and Termination.    The parties will endeavor to reach a definitive Disclosure Statement, Plan, APA and Canal's POA [defined in Exhibit "B"] within a reasonable time, but in any case not later than April 5, 2017 (the "Documentation Period"). This LOI will terminate automatically at the end of the Documentation Period if the Disclosure Statement, Plan and APA have not been filed with the Court by that date. This LOI shall be deemed automatically withdrawn and of no further force or effect if not fully executed by all parties on or before 5:00 p.m., C.S.T., on March 27, 2017.

7.    Entity Information.    At the appropriate time, BEI will form Buyer which will be a wholly owned subsidiary of BEI and will provide general entity information to the parties hereto.

8.    Expenses.    The parties will each bear their own costs for any travel, professional advice, and other expenses related to the proposed sale of the Restaurants, including this LOI, the Disclosure Statement, the Plan, the APA and related documents.

9.    Governing Law.    This LOI is governed by the laws of New York, without giving effect to any principles regarding conflict of laws that would cause the application of any other law. All actions to be performed hereunder are deemed to occur in Monroe County, New York. Venue for any dispute relating to this LOI shall be in the federal or state courts located in Monroe County, New York unless the law regarding the Proceedings dictates otherwise.

10.    Proceedings.    The parties agree to proceed with the following regarding the Proceedings:

   a.  Notify the Court of this LOI and request appropriate extensions of time, hearing dates and other deadlines to effectuate this LOI, including but not limited to extensions of time to accept or reject executory contracts.
   b.  Other agreements regarding use of cash collateral, stand still agreements, etc. will be extended to effectuate this LOI.
   c.  Canal will withdraw its Disclosure Statements and its Plans within seven (7) days after the filing of the joint Disclosure Statement and Plan.
   d.  BEI will modify its Disclosure Statement, Plan and APA consistent with the terms of this LOI so that such documents, if approved by the parties hereto, will be filed jointly by DIP, BEI, Canal and Bridge. As a result, none of the parties hereto will make any objections thereto.
   e.  The parties agree to expedite any process necessary to seek approval of the Plan and the closing of the APA.

f.  Subject to Court approval, the parties anticipate an Effective Date at or about July 1, 2017.

11. <u>Communication</u>. Except for communication that may be required by law or in the Proceeding, BEI, BFC and/or Buyer will coordinate all communication to the media, employees, trade journals, vendors and landlords regarding this transaction. Any inquiries shall be forwarded to the Buyer Contact.

By our signatures below, BEI, BFC, Canal, DIP and Bridge agree to the terms of this LOI. This LOI may be executed in two or more counterparts, any one of which need not contain the signatures of more than one party but all of such counterparts taken together will constitute one and the same agreement. Signatures by fax, .pdf or other electronic means shall be treated in all respects as an original. Please acknowledge your acceptance of the terms and conditions set forth above by signing in the space provided below and returning a signed copy to us.

Best Regards,

Bruegger's Enterprises, Inc.

By:___Paul Carolan_____

Its:___President_____

Bruegger's Franchise Corporation

By:___Paul Carolan_____

Its:___President_____

Flour City Bagels, LLC
Debtor-in-Possession

By:    HOT, LLC
       Its Sole Member

By:_____
       Philip Mistretta, Independent Manager

f. Subject to Court approval, the parties anticipate an Effective Date at or about July 1, 2017.

11. Communication. Except for communication that may be required by law or in the Proceeding, BEI, BFC and/or Buyer will coordinate all communication to the media, employees, trade journals, vendors and landlords regarding this transaction. Any inquiries shall be forwarded to the Buyer Contact.

By our signatures below, BEI, BFC, Canal, DIP and Bridge agree to the terms of this LOI. This LOI may be executed in two or more counterparts, any one of which need not contain the signatures of more than one party but all of such counterparts taken together will constitute one and the same agreement. Signatures by fax, .pdf or other electronic means shall be treated in all respects as an original. Please acknowledge your acceptance of the terms and conditions set forth above by signing in the space provided below and returning a signed copy to us.

Best Regards,

Bruegger's Enterprises, Inc.

By:_____
Its:_____

Bruegger's Franchise Corporation

By:_____
Its:_____

Flour City Bagels, LLC
Debtor-in-Possession

By:     HOT, LLC
        Its Sole Member

By:_____
        Philip Mistretta, Independent Manager

5

CANAL MEZZANINE PARTNERS II. LP

By:   Canal Mezzanine Management II, LLC.
      an Ohio limited liability company
Title: General Partner

    By:   Canal Holdings, LLC
    Title: Managing Member


    By: _____
        Kevin Coyne, President


Bridge Funding Group, Inc., f/k/a
United Capital Business Lending, Inc.


By: _____
Its: _____

CANAL MEZZANINE PARTNERS II, LP

By:  Canal Mezzanine Management II, LLC,
      an Ohio limited liability company
Title: General Partner

    By:  Canal Holdings, LLC
    Title:  Managing Member


       By:_____
               Kevin Coyne, President


Bridge Funding Group, Inc., f/k/a
United Capital Business Lending, Inc.

By: _Patricia Elvin_____
Its: _SVP_____

## Exhibit A - Restaurants

| Café | Location | Landlord |
|------|----------|----------|
| Bayberry | 7601 Oswego Rd., Route 57 Liverpool, NY 13090 | Trason-Global Realty LLC |
| Bushnell Basin - DT | 707-709 Pittsford - Victor Rd. Pittsford, NY 14534 | Rapowitz Associates LP |
| Clifton Park | 19 Clifton County Rd. Clifton Park, NY 12065 | Clifton Country Road Associates, LLC |
| Commissary | 1044 University Ave., Building 2, Space L, Rochester, New York 14607 | University Business Center, LLC |
| Delmar - DT | 180 Delaware Ave. Delmar, NY 12054 | Delaware Plaza, LLC |
| East Greenbush | Rensselaer County Plaza US Route 4 Rensselaer, NY 12144 | Rensselaer County Plaza Associates |
| Empire Boulevard | 1950 Empire Blvd. Webster, NY 14580 | Wegmans Food Markets Inc. |
| Erie Boulevard | 3065 Erie Blvd. E. DeWitt, NY 13224 | Erie Boulevard, LLC |
| Greece Town | 2496 W. Ridge Rd. Rochester, NY 14626 | Alloco Real Estate Management |
| Latham | 594 New Loudon Rd. Latham, NY 12110 | Newton Plaza Associates, LLC |
| Latta/Long Pond | 3177 Latta Rd. Rochester, NY 14612 | Wegmans Food Markets Inc. |
| Manlius | 122 E. Seneca St. Manlius, NY 13104 | JRT, LLC |
| Monroe & Clover | 2949 Monroe Ave. Brighton, NY 14618 | Monroe Clover Plaza LLC |
| Monroe-Goodman | 548 Monroe Ave. Rochester, NY 14607 | CNL APF Partners, LP |
| Nottingham | 333 Nottingham Road DeWitt, NY 13214 | EMG Nottingham, LLC |
| Panorama | 1601 Penfield Rd. Penfield, NY 14625 | Penfield TK Owner, LLC |
| Penfair Plaza | 2200 Penfield Rd. Penfield, NY 14526 | A Comparato Realty & Management |
| Perinton | 585 Mosley Rd. Fairport, NY 14450 | Wegmans Food Markets Inc. |
| Ridge & Portland | 1234 E. Ridge Rd. Rochester, NY 14621 | Morgan 1238 Ridge, LLC |
| Saratoga | 453 Broadway Saratoga Springs, NY 12866 | CNL APF Partners, LP |
| Southtown Plaza | 3333 W. Henrietta Rd. Rochester, NY 14623 | South Town Plaza Associates, LLC |
| Stuyvesant | Stuyvesant Plaza 1475 Western Ave. | Stuyvesant Plaza, Inc. |

| | Albany, NY 12203 | |
|---|---|---|
| Troy, NY | 55 Congress St.<br>Troy, NY 12180 | Sage Colleges |
| Union Street | 1634 Union St.<br>Schenectady, NY, 12309 | Charles Boehm (Florida) |
| Village Square | 1770 Central Ave.<br>Albany, NY 12205 | Central 1770, LLC |
| Western Ave. | 1800 Western Ave.<br>Albany, NY 12203 | Plaza Guild, LLC |
| West Taft Road | 5198 W. Taft Rd.<br>N. Syracuse, NY 13212 | CNL APF Partners, LP |
| Wolf Road | 98 Wolf Road<br>Albany, NY 12205 | Windsor Wolf Road<br>Properties LLC |
| 900 Central Ave. | 900 Central Ave.<br>Albany, NY 12206 | 900 Central Avenue LLC |

## EXHIBIT B – KEY TERMS

1. Purchase Price and Other Financial Terms.

   (a) The purchase price shall equal $4,450,000 (the "Purchase Price"), to be paid by a cash payment of $1,950,000 to the DIP (the "Cash Portion"), less a credit for any Transfer Taxes referenced in the APA and the balance payable to Bridge as described below.

   (b) In satisfaction of Bridge's claim in the Proceeding, Buyer will execute a Promissory Note (the "Note") to Bridge's affiliate, Bridge Funding Group, Inc. in the original principal sum of $2,500,000 bearing interest at 4.25% per annum with quarterly installments of principal and interest in the amount of $300,000 until paid with the first installment due three months after the Effective Date. The Note will be secured by a security interest in substantially all of the assets of Buyer and guaranteed by BEI. Bridge, BEI and Buyer will negotiate the terms of these documents.

   (c) Canal's claim in the Proceeding will be bifurcated into a secured claim of $1,500,000 and an unsecured claim of $3,002,229. The unsecured claim will participate in the treatment of unsecured creditors in the Plan. The secured claim will be treated as described below.

   (d) The Plan will provide that the Unsecured Creditors will receive $125,000 within six months after the Effective Date. If there are insufficient funds on hand to make that payment, the Buyer will agree to pay the difference out of its cash flow. In addition, Buyer will assume an obligation under the Plan to pay the Unsecured Creditors out of its cash flow twelve (12) installments of $15,000 per calendar quarter after the Effective Date consistent with the structure contained in BFC's proposed amended plan of reorganization filed January 20, 2017.

   (e) In satisfaction of Canal's secured claim in the Proceeding, Buyer and Canal will enter into a Purchase Option Agreement ("Canal's POA") granting Canal the right to receive (1) 100% of the Net Proceeds from the sale of Buyer and/or its assets to a third party and (2) an amount equal to any royalties that are paid by Buyer to BFC under the Franchise Agreement payable contemporaneously with the payment of such royalties. Net Proceeds shall be defined as the total purchase price, less the "Allowable Deductions". The POA will also include provisions to memorialize the other key terms outlined in this Exhibit B.

   (f) "Allowable Deductions" shall mean the following amounts which will be paid at Closing in the following order of priority, until each item is paid in full:

      i. any reasonable out of pocket costs and expenses (including but not limited to

brokerage fees, legal fees, escrow fees, filing fees, or other expenses that Buyer incurs in connection with such sale);

ii. any outstanding balance owed (inclusive of interest) by Buyer to the Unsecured Creditors described above;

iii. any amounts owed (inclusive of interest) by Buyer to Bridge under the Note;

iv. any amounts owed (inclusive of interest) on Capital Expenditure Loans (described below);

v. reimbursement of the Cash Portion of the Purchase Price which was invested in Buyer by BEI;

vi. any taxes which Buyer or Buyer's owner may owe or may/would be obligated to pay (without consideration of any loss carryforwards) on the sale; and

vii. if there are any claims of which Buyer is aware whether or not litigation has been commenced or a formal claim has been made against the Buyer or any of its affiliates, a reasonable amount to cover such claims shall be deposited in escrow, to be released to pay and/or resolve the claims with the balance after the resolution of all claims, less any costs of the escrow, released to Canal once the claim is resolved. If such claim is an insured claim, then only the full amount of the deductible amount with respect to any policy of insurance for such claim will be deposited in escrow, and released in the manner stated above at such time as said litigation or such claims have all been resolved, or the statute of limitations applicable to such claims have expired.

(g) On the Effective Date (as that term is defined in the Plan) BFC will be paid from the Cash Portion of the Purchase Price its superpriority administrative claim for the carve out pursuant to Section 9iii of the Standstill Agreement entered into in the Proceeding. For avoidance of doubt, this is the 2.5% of deferred royalties since the petition date. Other than the 2.25% current royalty payments and this 2.5% deferred royalty payment, BFC will not be entitled to any other royalties or payments arising out of DIP's operations or this transaction for pre-closing operations.

(h) In the event Buyer has insufficient funds from its cash flow to pay for the Capital Expenditures and working capital, and desires to obtain loans from its affiliates and/or third parties ("Capital Expenditure Loans"), it may do so in amounts and for purposes consistent with the Capital Budget (which may be modified from time to time in Buyer's sole discretion) and on arms-length terms (inclusive of interest at the rate of 4.25 per cent per annum), the payment of which will be paid out of cash

Case 2-16-20213-PRW    Doc 845-1    Filed 03/29/17    Entered 03/29/17 13:08:32    Desc
Exhibit A    Page 13 of 15

flow and if any balance is due at the Closing, it shall be paid before any distribution to Canal of the Net Proceeds.

(i) Buyer shall be prohibited from making any distributions or payments of any type (including dividends) to its owner or to any affiliates of such owner during the term of the POA, other than tax distributions (if applicable) and payments to BFC, BEI and their affiliates of amounts specifically constituting Authorized Expenses. "Authorized Expenses" shall mean:

    i. Payment of royalties at 5% consistent with the terms of this LOI and the Franchise Agreement.

    ii. Payment of the weekly contributions for the National Marketing Fund in the same percentage of gross sales as is required of other contributing Bruegger's franchisees, which may increase, at BFC's sole discretion, by up to one quarter of one percent (0.25%) per calendar year, but in no event will the required contribution during the term of the Franchise Agreements exceed three percent (3%) of Gross Sales, all in accordance with the terms of the Franchise Agreement. The current percentage is 1.75%.

    iii. Operating and management expenses as provided for in Paragraph 5 below.

2.    <u>Buyer's Sale Rights</u>. It is Buyer's intention to sell itself and/or the business at the Restaurants to a bona fide third party franchisee approved by BFC satisfying BFC's standard requirements as a Bruegger's franchisee in an arm's length transaction. No later than 24 months after the Effective Date, provided the Capital Expenditures have been completed, Buyer will commence such a refranchising process which shall include engaging third party experts, such as Cypress Advisors, to assist in the process. Buyer will consult with Canal on the refranchising process, provided however that Canal's approval shall not be required before the sales process goes to market. Buyer will provide Canal with a copy of any offering memorandum which is prepared for distribution as part of the re-franchising process. Upon receipt of a bona fide third party offer acceptable to Buyer and BEI by a qualified Bruegger's franchisee as determined by Buyer and BEI in their sole discretion (the "Acceptable Offer"), Buyer shall notify Canal in writing that such an Acceptable Offer has been made and provide to Canal (non-confidential) information concerning the terms of the same material to Canal's ROFR, as described below.

3.    <u>Canal's Right to Purchase</u>. Upon receipt of the Acceptable Offer, Canal shall have the right to assume all the terms, conditions and obligations of the Acceptable Offer upon written notice to Buyer within five (5) days of receipt of the Acceptable Offer ("ROFR"). If notice of the election is not timely received, then Canal's ROFR shall automatically terminate. If Canal should choose not to exercise its ROFR and the transaction outlined in the Acceptable Offer is not consummated, the ROFR shall apply to any future Acceptable Offers and any change in terms of an Acceptable Offer for which notice has been provided to Canal.

4.    Information Provided to Canal. During the period of time that Canal's POA is in effect, Buyer will provide to Canal within forty-five (45) days after the end of each fiscal quarter: (a) standard financial statements and profits and loss statements; (b) status updates on capital expenditures; (c) status updates on any Capital Expenditure Loans and the Capital Budget; (d) sales per Restaurant; (e) any updates to the Operating Budget that has been decided upon by Buyer; and (f) any offering memorandum that has been prepared and circulated for the sale of the business. In addition, Canal shall be granted the right to review the books and records of Buyer with respect to the Restaurants at BEI's offices in Dallas, Texas during normal business hours at its sole cost and expense and on no less than ten (10) days' written notice in order to confirm compliance with the various obligations set forth in the POA.

5.    Operation of the Restaurants. After the Effective Date, Buyer shall have the sole and exclusive right to operate and manage the Restaurants, including but not limited to making determinations to close any restaurant for any reason or no reason or enter into leases or lease extensions for the Restaurants on such terms as it deems appropriate. In connection with the operation and management of the Restaurants, Buyer shall in its discretion enter into Management Agreements, with BEI to hire and staff the Restaurants (with no mark-ups in costs); and with LDA (a BEI affiliate) to provide certain "back of house" services including but not limited to purchasing, technology, human resources, marketing, legal, accounting, banking, payroll and benefits management, at a cost equal to the costs allocated to all other Bruegger's corporate stores of BEI. The foregoing shall not be considered an improper distribution or dividend payment as prohibited by Paragraph 1 (h) above.

6.    Other Terms and Provisions. The POA shall contain such other terms, conditions, representations and warranties as are consistent with the foregoing and customary for like transactions and as otherwise mutually agreeable to the parties. Canal's rights under the POA will remain so long as BFC, directly or indirectly, owns or controls the Buyer or the Restaurants, provided, however, that in the event the Franchise Agreements have been terminated and Canal exercises its ROFR, it will be required, at BFC's option, to execute BFC's then current form of franchise agreements.